IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BRUCE VANDYKE,

        Plaintiff,

vs.

        Case No.:
        Honorable:

BAKEMARK USA, LLC,

        Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Bruce VanDyke ("Plaintiff" or "Mr. VanDyke"), by and through his attorneys, Dickinson Wright PLLC, and for his Complaint for injunctive relief and other relief against Defendant BakeMark USA, LLC ("BakeMark"), alleges and states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Bruce VanDyke is a resident and citizen of the State of Michigan.

2. Defendant BakeMark is a Delaware limited liability company with its principal place of business located in Pico Rivera, California.

3. BakeMark does business throughout the United States, including in Michigan, and employs personnel in Michigan.

1

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over BakeMark because it conducts business in Michigan and in this District. The actions of BakeMark described in this Complaint occurred in Michigan and in this District.

6. A substantial part of the events giving rise to this matter occurred in the Eastern District of Michigan, and as a result venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

7. Plaintiff incorporates by reference the foregoing allegations of this Complaint as if stated fully herein.

8. Dawn Food Products Inc. ("Dawn") provides bakery products and services to bakeries, bakers, and groceries throughout the United States.

9. From 2014 to 2020, Plaintiff was employed by Dawn Food Products Inc. ("Dawn") as a Key Account Manager. As a Key Account Manager for Dawn, Plaintiff was responsible for servicing Dawn's customers and developing Dawn's business.

10.     As part of his employment with Dawn, Plaintiff executed a Non-Compete Agreement, which precluded Plaintiff from competing against Dawn in specific and narrow instances for a period of six months following the termination of Plaintiff's employment with Dawn.

11.     In or around October of 2020, Dawn announced that it would be making widespread layoffs throughout the company. Plaintiff and an individual named Steven Hill ("Hill"), a Senior Director for Key Accounts, were among the employees terminated by Dawn at the end of 2020.

12.     Plaintiff's last day of employment with Dawn was December 31, 2021.

13.     As part of the employee terminations at the end of 2020, Dawn approached Plaintiff and other Dawn employees with Severance Agreements. The Severance Agreements included a non-disclosure provision, which precluded the former Dawn employees from disclosing Dawn's confidential or proprietary information. The Severance Agreements also required the former Dawn employees to return to Dawn all Dawn property and materials in their possession.

14.     Plaintiff executed the Dawn Severance Agreement on January 5, 2021.

15.     Shortly after departing from Dawn, Plaintiff and Hill began employment at BakeMark. Although BakeMark is a competitor of Dawn's, Plaintiff's new employment with BakeMark did not violate the narrow terms of his Non-Compete Agreement.

16. As part of his employment with BakeMark, Plaintiff entered into additional non-competition and non-disclosure agreements with BakeMark.

17. On April 21, 2021, Dawn filed a lawsuit against Plaintiff (the "Dawn Lawsuit"), alleging violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA"), violation of the Michigan Uniform Trade Secrets Act ("MUTSA"), M.C.L. § 445.1901, *et seq.*, and breach of Plaintiff's Non-Compete Agreement and Severance Agreement.

18. The Dawn Lawsuit is currently pending in the United States District Court for the Eastern District of Michigan, Ann Arbor Division and is captioned *Dawn Food Products, Inc. v. Bruce VanDyke* (Case No. 21-cv-10895). The Dawn Lawsuit is pending before the Honorable Judith E. Levy.

19. Among the allegations in the Dawn Lawsuit are claims that Plaintiff retained Dawn materials and disclosed allegedly confidential, proprietary, and trade secret information to BakeMark.

20. Plaintiff was served with a summons and complaint for the Dawn Lawsuit on April 26, 2021.

21. During the course of the Dawn Lawsuit, Dawn served upon Plaintiff interrogatories and document requests pursuant to the Federal Rules of Civil Procedure. Similarly, Plaintiff sat for deposition taken by attorneys for Dawn, pursuant to a notice of deposition issued under the Federal Rules of Civil Procedure.

22. Plaintiff was and is required by law to cooperate and participate in the Dawn Lawsuit.

23. During the course of discovery in the Dawn Lawsuit, Plaintiff was required to produce documents and provide testimony related to BakeMark's alleged acquisition and use of Dawn's allegedly confidential, proprietary, and trade secret information.

24. Documents produced by Plaintiff in the Dawn Lawsuit were produced under a protective order. BakeMark documents produced by Plaintiff in the Dawn Lawsuit have been designated as "confidential" or "attorney eyes only" pursuant to the terms of the protective order.

25. Throughout the course of the Dawn Lawsuit, BakeMark, either directly or through its agents, representatives, or attorneys, knew of the substance and scope of any documents or materials belonging to BakeMark that Plaintiff was required to produce.

26. On September 3, 2021—after counsel for Plaintiff notified counsel for BakeMark of the substance and scope of the BakeMark documents produced by Plaintiff in the Dawn Lawsuit—Bakemark terminated Plaintiff. Indeed, BakeMark requested that Plaintiff drive from his home in Michigan to BakeMark's office in Cincinnatti, Ohio, in order to terminate Plaintiff in person. The stated reason provided by BakeMark to Plaintiff for his termination was company "restructuring."

27. On or around the date BakeMark terminated Plaintiff, BakeMark also terminated Hill.

28. Upon information and belief, Plaintiff and Hill were the only BakeMark employees terminated on or around September 3, 2021 under the stated reason of "realignment."

29. As a result of the documents produced by and testimony provided by Plaintiff during the course of the Dawn Lawsuit, Dawn has moved for leave to amend its Complaint in the Dawn Lawsuit to add BakeMark and Hill as defendants.

30. In its motion to amend its Complaint, Dawn relies upon the documents produced by Plaintiff to make additional allegations that BakeMark actively solicited and obtained allegedly confidential, proprietary, and trade secret Dawn information from Plaintiff and Hill.

31. In its proposed First Amended Complaint in the Dawn Lawsuit, Dawn alleges several claims against BakeMark, including claims for violation of the Defend Trade Secrets Act and the Michigan Uniform Trade Secrets Act.

## COUNT I
## VIOLATION OF MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT, M.C.L. § 15.361, *et seq*.

32. Plaintiff incorporates by reference the foregoing allegations of this Complaint as if stated fully herein.

33. Plaintiff was an employee and BakeMark was his employer as covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 *et seq.* ("WPA").

34. Because of the Dawn Lawsuit, the United States District Court for the Eastern District of Michigan issued a Summons to Plaintiff and required Plaintiff's response to the Dawn Lawsuit. The Summons and Complaint were served upon Plaintiff by an agent of Dawn's counsel, an officer of the Court.

35. BakeMark terminated Plaintiff because of his participation in a court action at the request of a public body, and in particular the case captioned *Dawn Food Products, Inc. v. Bruce VanDyke* (Case No. 21-cv-10895), in which Plaintiff was required to disclose documents and provide testimony in furtherance of Dawn's allegations of misappropriation of Dawn's trade secrets.

36. Plaintiff has participated in the Dawn Lawsuit in good faith and as required by law, including by producing documents and providing testimony during the course of the Dawn Lawsuit.

37. BakeMark, its agents, representatives, management, and/or employees, knew or had reason to know that Plaintiff's disclosure of BakeMark documents and communications during the Dawn Lawsuit might lead to allegations by Dawn against BakeMark for violations of law, including for violations of the DTSA and MUTSA.

38. Plaintiff's termination by BakeMark was carried out in retaliation for his required participation in the Dawn Lawsuit and for his disclosure of BakeMark documents and communications, as required by law.

39. BakeMark also terminated Plaintiff because he reported or was about to report, through his required participation in the Dawn Lawsuit, an alleged violation of law or suspected violation of law by BakeMark, including but not limited to BakeMark's alleged use and misappropriation of Dawn's trade secrets, in violation of the DTSA and MUTSA.

40. BakeMark, its agents, representatives, management, and/or employees were aware of the scope and substance of documents produced by Plaintiff in response to formal discovery requests issued by Dawn during the Dawn Lawsuit.

41. The retaliatory conduct of BakeMark, its agents, representatives, and employees, including in committing, directing and/or condoning Plaintiff's termination, violated the WPA.

42. BakeMark's actions, and those of its agents, representatives, and employees, were intentional, wanton, willful, malicious and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

43. As a direct and proximate result of BakeMark's wrongful acts, Plaintiff sustained injuries and damages including but not limited to loss of earnings and benefits, mental anguish, anxiety about his future, physical and emotional distress, humiliation and embarrassment, loss of personal and professional reputation, damage to his good name and reputation, and loss of the ordinary pleasures of everyday life.

## COUNT II
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

44. Plaintiff incorporates by reference the foregoing allegations of this Complaint as if stated fully herein.

45. Because of the Dawn Lawsuit, the United States District Court for the Eastern District of Michigan issued a Summons to Plaintiff and required Plaintiff's response to the Dawn Lawsuit. The Summons and Complaint were served upon Plaintiff by an agent of Dawn's counsel, an officer of the Court.

46. Plaintiff has participated in the Dawn Lawsuit in good faith and as required by law, including by producing documents and providing testimony during the course of the Dawn Lawsuit.

47. Plaintiff's termination was carried out in retaliation for his required participation in the Dawn Lawsuit and for his disclosure of BakeMark documents and communications, as required by law.

48. BakeMark knew or had reason to know that Plaintiff's disclosure of BakeMark documents and communications during the Dawn Lawsuit might lead to allegations by Dawn against BakeMark for violations of law, including for violations of the DTSA and MUTSA.

49. Plaintiff's termination violated clearly established public policy of the State of Michigan in that an employer may not discharge an employee where the reason for the discharge of the employee is the failure or refusal to violate a law.

50. BakeMark's stated reason for Plaintiff's termination, which was purportedly "restructuring," was merely pretext for BakeMark's retaliatory and unlawful termination of Plaintiff.

51. The actions of BakeMark, its agents, representatives, and employees were intentional, wanton, willful, malicious and taken in bad faith, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

52. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

53. As a further direct and proximate result of BakeMark's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish; anxiety about his future, physical and emotional distress, humiliation and embarrassment; loss of professional reputation; damage to his good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## **RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

A. Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

B. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

C. Exemplary damages in whatever amount Plaintiff is found to be entitled;

D. Punitive damages in whatever amount Plaintiff is found to be entitled;

E. An award of interest, costs and reasonable attorney fees; and

F. Whatever other declaratory and/or equitable relief that the Court deems appropriate.

Dated: December 2, 2021

                    Respectfully submitted,

                    DICKINSON WRIGHT, PLLC

                    */s/ Robert Zora* (P74231)
                    **Robert Zora (P74231)**
                    **Dalia Abdow (P83657)**
                    500 Woodward Avenue, Suite 4000
                    Detroit, Michigan 48226
                    313-223-3500
                    rzora@dickinsonwright.com
                    dabdow@dickinsonwright.com
                    *Attorneys for Plaintiff*